IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICHARD H. CARTER, JR., )
                         )
         Plaintiff,      )      1:12CV95
                         )
v.                       )
                         )
MICHAEL CUTLER COMPANY, et al., )
                         )
         Defendants.     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court for a recommended ruling on Defendants Michael Cutler of Georgia, Inc. ("MCG") and Michael F. Cutler's ("Cutler") (collectively "Defendants") Motion to Dismiss Count II and Count III of Plaintiff's second amended Complaint for failure to state a claim upon which relief may be granted. (Docket Entry 16.) Also before the Court is Defendant Cutler's Motion for Summary Judgment. (Docket Entry 23.) For the reasons stated herein, the Court will recommend that Defendants' motion to dismiss (Docket Entry 16) be granted and Defendant Cutler's motion for summary judgment (Docket Entry 23) be granted.

## I. PROCEDURAL BACKGROUND

Plaintiff originally filed this action against Defendants in the General Court of Justice, Superior Court Division, in Richmond County on December 29, 2011, alleging breach of contract, violations of the Perishable Agricultural Commodities Act ("PACA"), violations of the Lanham Act, unjust enrichment, and unfair and deceptive trade practices. (Docket Entry

1.) On January 27, 2012, a petition for removal was filed. (*Id.*) On April 29, 2012, the Court adopted the joint Rule 26(f) report in which Plaintiff had until December 1, 2012 to request leave to join additional parties or amend pleadings. (*See* Text Order dated April 29, 2012.) On October 9, 2012, Plaintiff filed an amended Complaint (Docket Entry 12) and thereafter filed a second amended Complaint ("Am. Compl.") (Docket Entry 13) on October 16, 2012. On November 29, 2012, Defendants filed a motion to dismiss Counts II and III of Plaintiff's amended complaint. (Docket Entry 16.) Plaintiff filed a response brief. (Docket Entry 21.) On May 6, 2013, Defendants Cutler and MCC filed motions for summary judgment as to all claims. (Docket Entries 23 and 25.) Plaintiff thereafter filed a motion to amend the Complaint and a motion for leave to file voluntary dismissals of certain parties and claims. (Docket Entries 27 and 28.) On August 26, 2013, a telephone conference was held regarding the status of the pending claims. By consent of both parties, Defendant MCC was dismissed from the case. Plaintiff was granted an extension of time to file a response to Defendant Cutler's motion for summary judgment. Plaintiff filed a response and also filed notices of voluntary dismissals. (Docket Entries 39-42.) Defendants filed a reply. (Docket Entry 48.)

## II. FACTUAL BACKGROUND

The following facts as alleged by Plaintiff in the Complaint are taken in the light most favorable to Plaintiff. Plaintiff is a farmer who works and resides in Richmond County, North Carolina. (Second Amended Compl. ¶ 1, Docket Entry 13.) Defendant MCG is a carrot processing company which owns carrots from the time of planting through delivery to the end user. (*Id.* ¶ 13.) Defendant Cutler is the sole shareholder, a director, and the chief

executive officer, chief financial officer, and president of MCG. (*Id.* ¶ 10.) Plaintiff grew carrots for Defendant MCG beginning in 2009.[1] Plaintiff was required to certify that he would grow carrots for Defendants in accordance with "Good Agricultural Practices guidelines (GAP)." (*Id.* ¶ 26.) In January 2010, Plaintiff agreed to grow carrots for the Company again in the 2010 growing season. (*Id.* ¶¶ 21-22.) Defendant Cutler provided Plaintiff with instructions for planting seeds of various varieties of carrots on over 400 acres of Plaintiff's land, to be harvested throughout 2010. (*Id.* ¶ 23.) At various times throughout their business relationship, Plaintiff told Defendant Cutler that it would be very difficult to grow a year-round carrot crop in North Carolina, given the extreme heat during the summer months. (*Id.* ¶ 24.) In response, Defendants stressed the importance of a year-round carrot crop in North Carolina in order to establish their "East Coast presence," and guaranteed Plaintiff that the long-term benefits of establishing a year-round crop were, to them, worth the risks of such an "experimental crop." (*Id.* ¶ 25.)

Despite his concerns over the experimental nature of the crop, Plaintiff went forward with planting the carrot crop in his fields and making various other expenditures in reliance on the Defendants' representations that Plaintiff would bear none of the risks associated with the crop because he would be paid based on his costs per an agreed schedule, plus 10%, and not based on the amount of carrots actually produced. (*Id.* ¶ 32.) Plaintiff also relied on the Defendants' representation that Plaintiff would be producing carrots for Defendants on a long-term basis once the viability of growing carrots on essentially a year-round basis in

---

[1] Throughout the Complaint, Plaintiff refers to Defendant MCC as "the Company". Defendant MCC is no longer a party to this action. The parties are aware that the company in which Defendant contracted with is MCG. Thus, the Court will construe Plaintiff's reference to "the Company" as direct relation to MCG.

3

Richmond County was established. (*Id.* ¶ 29.) Shortly after Plaintiff agreed to grow the experimental crop, Defendants began to advertise that the "unique climate in the Carolinas allows for the production of two separate crops," and that "beginning July 2010 our Carolina carrots ship through January." (*Id.* ¶ 30.) It was important to the Defendants' marketing efforts that there at least appeared to be a crop of carrots being produced in North Carolina. (*Id.*) Plaintiff was unaware that Defendants had already begun marketing some of the carrots being shipped from their Statesboro, Georgia, processing plant as "Carolina Carrots," even though those carrots included Mexican and Canadian-grown carrots that had been rebagged and mislabeled and were, by their barcode, capable of being mistakenly retraced to Plaintiff's farm. (*Id.* ¶ 31.) Defendants paid Plaintiff for his growing services for a time, but in the fall of 2010, stopped harvesting from Plaintiff's fields, failing to provide a harvester as agreed and to accept the crops when they were ready to be harvested, because the Defendants did not need the carrots given that they were already marketing the Mexican and Canadian carrots as "Carolina Carrots." (*Id.* ¶¶ 31, 37, 84.) This resulted in the carrots wasting in the fields, thereby denying Plaintiff the use of his fields for planting and growing a crop in the spring of 2011. (*Id.* ¶¶ 37, 39, 41.) Plaintiff has calculated that the loss of the use of his farmlands for the spring of 2011 cost him $171,696.00. (*Id.* ¶ 45.) Defendants have also failed to pay Plaintiff an additional $841,346.84, which is the amount still owed under the contract to pay Plaintiff his costs, per the agreed schedule, plus 10%, for the 2010 growing season. (*Id.* ¶ 42.)

4

## III. DISCUSSION

*Defendants' Motion to Dismiss Counts II and III of Plaintiff's Second Amended Complaint*

In their motion to dismiss, Defendants seek to dismiss Counts II and III of Plaintiff's second Amended Complaint. Plaintiff has agreed to dismiss Count III of the Second Amended Complaint. (*See* Pl.'s Resp. Br. at 4 n. 2, Docket Entry 21; *see also* Docket Entry 41.) Count II of Plaintiff's Complaint alleges violations of the Perishable Agricultural Commodities Act, 1930 ("PACA"), 7 U.S.C. §§ 499a and 499s. Defendants argue that Plaintiff's PACA claim fails to allege the essential elements of a PACA claim and fails to allege damages as a result of any violations by Defendants.

A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* at 555. "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (*quoting Twombly*, 550 U.S. at 570). As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has

5

acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 does not, however, unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact. . . .")" *Id.* at 555 (internal citations omitted). "Rule 12(b)(6) does not countenance . . . dismissals

6

based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416, U.S. 232, 236 (1974)).

B. <u>Analysis</u>

In his second Amended Complaint, Plaintiff alleges that he produced the Experimental Crop as agreed upon by the parties, which Defendants rejected "without reasonable cause." (Second Am. Compl. ¶ 67, Docket Entry 13.) Plaintiff further alleges that Defendants made fraudulent, misleading statements that induced Plaintiff to contract with Defendants by misrepresenting that Plaintiff would produce carrots for Defendants on a long-term basis. (*Id.* ¶¶ 68-69.) Plaintiff states that Defendants were mislabeling and rebagging Mexican and Canadian carrots while representing to the public that they were "Carolina carrots." (*Id.* ¶ 69.) Plaintiff alleges that Defendants' conduct violated PACA, 7 U.S.C. § 499b. (*Id.* ¶ 70.)

Section § 499b of PACA relates to unfair conduct and states:

It shall be unlawful in or in connection with any transaction in interstate or foreign commerce:

. . .

(2) For any dealer to reject or fail to deliver in accordance with the terms of the contract *without reasonable cause* any perishable agricultural commodity . . . .

. . .

(4) For any commission merchant . . . to make, for a *fraudulent* purpose, any false or misleading statement in connection with any transaction involving any perishable agricultural commodity which is received in interstate or foreign commerce by such commission merchant . . . .

(5) For any commission merchant, dealer, or broker to misrepresent by word, act, mark, stencil, label . . . or State, country, or region of origin of any

7

perishable agricultural commodity received, shipped, sold, or offered to be sold in interstate or foreign commerce. . . .

7 U.S.C. § 499b (emphasis added). A dealer in violation of these provisions is liable for damages sustained by the injured party. 7 U.S.C. § 499e(a). The essential elements of a claim for unfair conduct are: "1) a person (2) who had a transaction in any perishable agricultural commodity (3) with any commission merchant, dealer or broker (4) who failed or refused truly and correctly to account and make full payment promptly for that transaction." *Eastside Food Plaza, Inc. v. ""R" Best Produce, Inc.*, 03 CIV. 106 (SAS), 2003 WL 21727788, at *3 (S.D.N.Y. July 23, 2003) (citing 7 U.S.C. § 499b(4).)

To the extent Plaintiff's Complaint alleges violation of 7 U.S.C. §§ 499b(2), (4) and (5), Plaintiff's Complaint fails. The Complaint fails to allege that Plaintiff was a seller of a perishable commodity which would illustrate an actual transaction between Plaintiff and Defendants. In fact, Plaintiff's Complaint states the complete opposite. Plaintiff's Complaint states, "[a]t no time did [Plaintiff] act as a seller, nor did Defendants act as buyers, as the terms are defined in the Uniform Commercial Code, of carrots." (Second Am. Compl. ¶ 20.) The Complaint further states that Plaintiff "promised to act as a 'consultant' for [Defendants] in the production of a North Carolina Carrot crop for the 2010 growing season." (*Id.* at ¶ 21.) Defendants owned the carrots from the time of planting through delivery to the end-user. (*Id.* ¶¶ 13, 19, 37.) The Complaint essentially alleges PACA violations based upon Defendants' rejections of its *own* carrot crop. PACA was created to protect *sellers* of perishable commodities;[2] the carrots were never sold by Plaintiff to

---

[2] The Fifth Circuit explains:

Defendant. Thus by the nature of Plaintiff's own allegations, there are no facts present to assert a claim under PACA.³

To the extent Plaintiff alleges violations of PACA as a trust beneficiary, his claim fails. Under PACA, commission merchants, dealers, and brokers hold, in trust, the produce and any proceeds from the sale of such produce for the benefit of unpaid produce sellers until full payment has been made. 7 U.S.C. § 499e(c)(2). To become a valid PACA trust beneficiary:

> (1) the produce in question must be "perishable agricultural commodities"; (2) the commodities must have been received by a commission merchant, a dealer, or broker; and (3) the claimant must have provided written notice of its intent to preserve its rights under PACA within 30 days after payment became due.

*C & G Farms, Inc. v. Capstone Bus. Credit, LLC*, CV F 09-0032 LJO SKO, 2011 WL 677487 at *5 (E.D. Cal. Feb. 17, 2011). It is clear that the second element is not satisfied since the carrots, owned by Defendants, were never harvested.

---

> PACA was enacted in 1930 to regulate the *sale* of perishable commodities and promote fair dealing in the sale of fruits and vegetables. In 1984, PACA was amended to extend its protection to *sellers* of perishable commodities, who, because of the need to sell their products quickly, were often unsecured creditors of buyers whose creditworthiness they were unable to evaluate before the sale.

*Produce Alliance v. Let-Us Produce*, 776 F. Supp. 2d 197, 201 (E.D. Va. 2011) (quoting *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc.*, 336 F.3d 410, 413 (5th Cir. 2003) (emphasis added).

³ Several PACA claim cases involve disputes between parties in a seller/buyer relationship. See e.g., *L & M Companies, Inc. v. Biggers III Produce, Inc.*, 3:08CV309-RJC-DCK, 2010 WL 1439411 (W.D.N.C. Apr. 9, 2010) (sellers of perishable agricultural commodities file action under PACA for money owed to sellers as beneficiaries of the trust); *Six L's Packing Co., Inc. v. Beale*, 12-5659, 2013 WL 1395961 (6th Cir. Apr. 8, 2013) (seller filed action against buyer under PACA); *Dell's Maraschino Cherries Co., Inc. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459, 464 (E.D.N.Y. 2012) (dispute alleging violations of PACA arising from contract in which Plaintiff agreed to purchase product from Defendant). Here, Plaintiff clearly denies such role which further supports the argument that this case involves solely a breach of contract claim

9

Plaintiff also fails to allege sufficient facts for a claim of fraudulent misrepresentation. Fed. R. Civ. P. 9(b) requires that a party "state with particularity the circumstances constituting fraud or mistake." (Fed. R. Civ. P. 9(b).) "The 'circumstances' of a fraud claim that must be pled with particularity include 'the time, place, and contents of the false representations, as well as the identity of the person making the representations and what he obtained thereby.'" *Food Lion, LLC v. Schuster Mktg. Corp.*, 382 F. Supp. 2d 793, 797 (E.D.N.C. 2005) (citations omitted.) The essential elements of fraud are: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Id.*; *see also Johnson v. GAPVT Motors, Inc.*, 292 Ga. App. 79, 82, 663 S.E.2d 779, 783 (2008); *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974).

Here, Plaintiff simply fails to allege specific facts of fraudulent misrepresentation. Plaintiff states that Defendants misrepresented to Plaintiff that he would be producing carrots for Defendants "on a long-term basis once the viability of growing carrots on essentially a year-round basis in Richmond County was established." (Second Am. Compl. ¶ 69.) This statement alone is speculative in nature, not definitive or specific. *See Butler v. Winner Int'l Corp.*, 60 F.3d 821 at *5 (4th Cir. 1995) ("fraudulent misrepresentation . . . must be of a subsisting or ascertainable fact") (unpublished opinion); *Synovus Bank v. Karp*, 887 F. Supp. 2d 677, 700 (W.D.N.C. 2012) (expressions of opinions sufficient only if, when made, "[Plaintiff] held an opinion contrary to the opinion he expressed, and that [Plaintiff] did so with the intent to deceive Defendants.") Plaintiff fails to allege the specific time and place of the fraudulent acts, therefore Plaintiff has not set forth a valid claim for fraud.

10

Even assuming *arguendo* Plaintiff sufficiently alleges the essential elements of a PACA claim, (and by virtue of the fact that Defendant MCG was a licensed "dealer"), Plaintiff's complaint still fails to allege how he sustained damages as a result of any such violations. "PACA does not provide for an automatic award of damages for violation of the Act or the regulations promulgated thereunder." *Combined Prof'l Res., Inc. v. Limeco, Inc.*, 801 F. Supp. 664, 673 (S.D. Fla. 1992) *aff'd sub nom. Combined Prof'l v. Limeco*, 9 F.3d 1558 (11th Cir. 1993). If any dealer violates any provision of 7 U.S.C. § 499b, he "shall be liable . . . for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e(a). Plaintiff admits in his Complaint that he would "bear no risk associated with the crop because he would be paid based on his costs as per an agreed schedule, plus ten percent thereof; rather than [sic] being paid based on the amount of carrots actually produced." (Am. Comp. ¶ 32.) Thus, the deal between the parties was such that Plaintiff would get paid regardless of the result of the Experimental Crop. Furthermore, as Defendants argue, Plaintiff cannot assert damages based upon the alleged mislabeling of carrots because he lacks standing to do so.

In *Schulz v. Pataki*, 137 F. Supp. 2d 80, 83 (N.D.N.Y. 2001), the court held that the plaintiff lacked standing to bring a PACA claim against the defendants. The court stated that, at most, the plaintiff's allegations would support a claim for the contractor in receipt of the deliveries. *Id.* In the present case, Plaintiff has not alleged that he owns the alleged mislabeled carrots, or the Carolina carrots growing in his field. Based upon Plaintiff's failure to allege facts sufficient for a PACA claim, and failure to allege damages as a result of any such violations, Defendants' motion to dismiss should be granted.

*Defendant Cutler's Motion for Summary Judgment*

Also before the Court is Defendant Cutler's motion for summary judgment on all claims. (Docket Entry 24.) Plaintiff has taken a voluntary dismissal of certain claims against Cutler. (Docket Entry 39.) Moreover, the Court has already concluded that Plaintiff's claims under PACA and the Lanham Act should be dismissed. Therefore, the Court will address the remaining claims against Defendant Cutler.

A. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the court must view the evidence, and

all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

B. <u>Analysis</u>

In his motion for summary judgment, Defendant contends that Plaintiff's attempt to pierce the corporate veil to assert claims directly against Defendant Cutler fails because Defendant MCG is not insolvent. Under Georgia law, a corporation must be insolvent to pierce the corporate veil and hold shareholders personally liable for the actions of the corporation. *Johnson v. Lipton*, 254 Ga. 326, 327, 328 S.E.2d 533, 535 (1985). In his voluntary dismissal of partial claims against Defendant Cutler, Plaintiff concedes that he is unable to pierce the corporate veil. (Docket Entry 39.) Instead, Plaintiff argues that Defendant Cutler should be held personally liable for his own tortious conduct.

"[I]t is well established that '[a]n officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, [and] an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or co-operated therein.' *Cherry v. Ward*, 204 Ga. App. 833, 834, 420 S.E.2d 763, 765 (1992) (citations and punctuation omitted.)[4] Plaintiff contends that the evidence in support of the motion for summary judgment shows that he may sustain a cause of action under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") against

---

[4] This is also true in North Carolina. See *Haynes v. B & B Realty Grp., LLC*, 179 N.C. App. 104, 109, 633 S.E.2d 691, 694 (2006); *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 518, 398 S.E.2d 586, 600 (1990).

13

Defendant Cutler. "[T]o state a claim under the UDTPA a party must establish that (1) the defendant engaged in an 'unfair' or 'deceptive' act or practice; (2) the act was in or affecting commerce; and (3) the act injured the plaintiff." *Rutledge v. High Point Reg'l Health Sys.*, 558 F. Supp. 2d 611, 619 (M.D.N.C. 2008) (citing N.C. Gen. Stat. § 75-1.1.) Under the first element, a practice is considered "unfair" when "it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Proof of fraud constitutes violation under the UDTPA. *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975). However, fraud is not necessary:

> Fraud is a separate and distinct legal claim and is not a required element for an [UDTPA] claim. Indeed, "[t]his Court has held that *'it is not necessary for the plaintiff to show fraud* . . . but 'plaintiff must ... show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception.'"

*Estate of Hurst ex rel. Cherry v. Moorehead I, LLC*, COA12-1285, 2013 WL 3991552 at *9 (N.C. Ct. App. Aug. 6, 2013) (internal citations omitted) (emphasis added).

Although fraud is not required, Plaintiff appears to make his argument under the UDTPA claim strictly based upon alleged fraud on the part of Defendant Cutler. In response to Defendant Cutler's summary judgment motion, Plaintiff again argues evidence of fraud based upon misrepresentation by Defendants that Plaintiff would be growing Carolina carrots long-term, when in fact Defendants were mislabeling Canadian and Mexican carrots while marketing them as Carolina carrots. (Pl.'s Resp. Br. at 24, Docket Entry 42.) Plaintiff claims that this is fraud in the inducement. *Id.* at 23.[5] Like the PACA claim,

---

[5] *See Food Lion*, 382 F. Supp. 2d at 797 (stating elements of fraud.).

14

Plaintiff's evidence here does not establish the essential elements of fraud. Construing the evidence in light most favorable Plaintiff, Defendant Cutler's alleged conduct of mislabeling the Canadian and Mexican carrots as Carolina carrots may have very well been deceitful in nature. However, Plaintiff fails to show how such conduct injured him as he would not have been the person deceived. Plaintiff was not the owner of the Mexican and Canadian carrots, nor was Plaintiff the recipient of those carrots. Even if Plaintiff was induced by Defendant Cutler to enter into this growing agreement, the evidence purports to show how other non-parties may have been injured rather than Plaintiff himself. The measure of damages under a UDTPA claim seeks to restore the injured party back to its original condition. *See Media Network, Inc.*, 197 N.C. App. at 448, 678 S.E.2d at 681; *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App. 49, 61, 620 S.E.2d 222, 231 (2005). The evidence fails to show how Defendant Cutler's alleged inducement lead to Defendants' rejection of the fall 2010 crop and prevented Plaintiff from growing his spring 2011 crop. At most, Plaintiff's purported injuries lie squarely in the face of his breach of contract claim against Defendant MCG. There is no genuine issue of material fact as to the third element of Plaintiff's UDTPA claim, thus summary judgment should be entered in favor of Defendant Cutler.

Plaintiff also seeks punitive damages against Defendant Cutler. Punitive damages are awarded in addition to compensatory damages for willful and wonton conduct and "is usually allowed to punish defendant and deter others." *Watson v. Dixon*, 352 N.C. 343, 348, 532 S.E.2d 175, 178 (2000) (citations omitted). Punitive damages is not a separate cause of action; "[i]f the complainant fails to plead or prove his cause of action, then he is not allowed an award of punitive damages because he must establish his cause of action as a

15

prerequisite for a punitive damage award." *Id.* The Court has previously determined that Plaintiff has not established a cause of action against Defendant Cutler. Therefore, summary judgment should be entered in favor of Defendant Cutler as to punitive damages.

## IV. CONCLUSION

Based upon the foregoing reasons, Defendants' motion to dismiss (Docket Entry 16) counts II and III of Plaintiffs Complaint should be granted. Furthermore, Defendant Cutler's motion (Docket Entry 23) for summary judgment should be granted.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
September 6, 2013